**COMPLAINT BY A PRISONER UNDER THE CIVIL RIGHTS ACT, 42 U.S.C § 1983**

Name Mullen Bartolo
(Last) (First) (Initial)

Prisoner Number NA 202726-6

Institutional Address 2100 Napa Vallejo Hwy., Napa, CA 94558

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

BARTOLO MULLEN,
Plaintiff,

vs.

MR. ED FOULK; MR. TOM MORIADA; OFFICER JESUS GALLEGOS; CATHERINE BLAKEMORE; MICHELLE MUDGETT; AND SUSAN KESSLER,
Defendants.

Case No. CV 07 6250 RMW (PR)
(Related Pending Suit--No. C 03-3676 RMW (PR))

**COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C § 1983**
**(Jury Trial Demanded)**

[**NOTE:** Plaintiff's place of confinement does not provide and even blocks access to sufficient legal research materials to prepare pro se pleadings, appeals, and other legal documents, and uses other methods to prevent meaningful access to the courts, in violation of Lindquist v. Idaho State Board of Corrections, 776 F.2d 851, 856 (9th Cir. 1985), and plaintiff requests the Court to hold this pro se complaint to less stringent standards than the formal pleadings drafted by lawyers, because the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel. (*See* Armstrong v. Rushing, 352 F.2d 836 (9th Cir.1965) (pro se litigant entitled to procedural protections, including right to amend complaint unless futile); Potter v. McCall, 433 F.2d 1087, 1088 (9th Cir.1970) (per curiam); *Haines v. Kerner*, 404 U.S. 519 (1972); *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S.Ct. 700, 701, 70 L.Ed.2d 551 (1982); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir.1987); Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir.1987); *Baslistreri v. Pacifica Police Dept.*, 901 F. 2d 696 (9th Cir. 1990).]

A. Place of present confinement Napa State (mental) Hospital

B. Is there a grievance procedure in this institution?
YES (X) NO ( )

C. Did you present the facts in your complaint for review through the grievance procedure?

YES (X) NO ( )

D. If your answer is YES, list the appeal number and the date and result of the appeal at each level of review. If you did not pursue a certain level of appeal, explain why.

**1. Informal Appeal**

The Patients' Rights Office will not respond in writing to Plaintiff's complaints; thus making it impossible to exhaust grievance procedure. (See enclosed affidavit signed by a random sample of patients that verifies OPR is not responding to complaints.)

The doctrine of exhaustion of administrative remedies has not hardened into inflexible dogma. (*Hollon v. Pierce* (1967) 257 Cal.App.2d 468, 476 [64 Cal.Rptr. 808].) It contains its own exceptions, as when the subject matter of the controversy lies outside the administrative agency's jurisdiction (*County of L.A. v. Dept. of Social Welfare* (1953) 41 Cal.2d 455, 457 [260 P.2d 41]), when pursuit of an administrative remedy would result in irreparable harm (*Greenblatt v. Munro* (1958) 161 Cal.App.2d 596, 605-607 [326 P.2d 929]; see *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 296-297 [109 P.2d 942, 132 A.L.R. 715]), when the administrative agency cannot grant an adequate remedy (*Endler v. Schutzbank* (1968) 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297]; *Eye Dog Foundation v. State Board of Guide Dogs for the Blind* (1967) 67 Cal.2d 536, 543-544 [63 Cal.Rptr. 21, 432 P.2d 717]), and when the aggrieved party can positively state what the administrative agency's decision in his particular case would be. (*See Gantner & Mattern Co. v. California E. Com.* (1941) 17 Cal.2d 314, 318 [109 P.2d 932]; *Ogo Associates v. City of Torrance* (1974) 37 Cal.App.3d 830, 834; *In re Thompson* (1985) 172 Cal.App.3d 256, 262-263; *In re Fain* (1976) 65 Cal.App.3d 376, 395; *In re Dexter* (1979) 25 Cal.3d 921, 925; see also *Exhaustion of Administrative Remedies in California*, 56 Cal.L.Rev. 1061, 1068-1081.)

The Office of Patients' Rights (OPR) at Napa State Hospital, a subsidiary of Protection & Advocacy, Inc. (PAI), stopped responding to patients' complaints/grievances a few months ago and although Plaintiff submitted several complaints about the issues in this complaint, he still has not received a written response from OPR. Moreover, unlike the grievance procedure the State Department of Corrections and Rehabilitation provides for its prisoners, the grievance procedure at Napa State Hospital does not inform its mental patients in writing of the reasons for exceptional delays preventing closure within the specified time limits and the Napa State

Hospital procedure does not give the mental patients an estimated completion date. (See *Bailey v. Loggins* (1982) 32 Cal.3d 907, 932, citing *In re Muszalski* (1975) 52 Cal.App.3d 500, 506-507 [125 Cal.Rptr. 286.)

Additionally, there are not any effective administrative remedies here because Defendant Jesus Gallegos' actions are tantamount to perjury and other criminal acts, Defendant Ed Foulk's sanctioning of this also constitutes perjury and other criminal act, and "the exhaustion requirement does not apply where an effective remedy is lacking. (*Rosenfield v. Malcolm* (1967) 65 Cal.2d 559 [55 Cal.Rptr. 505, 421 P.2d 697]; In re Thompson (1975) 52 Cal.App.3d 780, 783, citing *Greenblatt v. Munro* (1958) 161 Cal.App.2d 596 [326 P.2d 929]) ("[W]here no specific remedy is provided, the mere existence of a general supervisory power in some official body is not a remedy to be exhausted," and "[a]nother exception to the exhaustion rule would be where some irreparable damage would occur from the denial of immediate judicial relief.")

**E. The First Informal level** is last level that is available to Plaintiff, as the Office of Patients' Rights will not respond to my grievances in writing.
YES (X)       NO ( )

F. If you did not present your claim for review through the grievance procedure, explain why.
        Patients' Rights Office will not respond in writing, but see attached complaints plaintiff filed.

**II. Parties**

**Plaintiff**

A. Bartolo Mullen, 2100 Napa Vallejo Hwy., Napa, California 94558.

**Defendants**

B. Mr. Ed Foulk, Executive Director, Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558;  Mr. Tom Moriada, Program 3 Director, 2100 Napa Vallejo Hwy., Napa, California 94558; Officer Jesus Gallegos, Napa State Hospital Police Officer, 2100 Napa Vallejo Hwy., Napa, California 94558; Catherine Blakemore, Executive Director, Protection and Advocacy Inc., Sacramento Regional Office, 100 Howe Ave., Suite 235 North, Sacramento, California 95825; Michelle Mudgett, Director Office of Patients' Rights, 100 Howe Ave., Suite 185 North, Sacramento, California 95825; Advocate Susan Kessler, Napa State Hospital Office of Patients' Rights, 2100 Napa Vallejo Hwy., Napa, California 94558;

**III Statement of Claim**

**a. First Cause of Action**

**Defendants Ed Foulk & Jesus Gallegos**

On July 9, 2007, NSH Police Officer Jesus Gallegos came to Ward T-13 where I am housed and informed me he was there to confiscate my computer ostensibly to search for evidence of counterfeiting money. Officer Gallegos then confiscated my computer, computer printer, computer accessories, and other items, without probable cause and without State or Federal due process and the equal protection of the laws.

On July 9, 2007, NSH Police Officer Gallegos also confiscated a computer and other personal property belonging to Ward T-13 patient Lance Kerins (See Kerin's affidavit) when he confiscated my computer, etc, and Gallegos said Kerins' property was also being seized to search for evidence of counterfeiting money.

On July 18, 2007, Officer Gallegos served Lance Kerins and I with identical search warrants with the same Property Control Number (#07-07-0500), but there was no supporting affidavit with the search warrants. The search warrants apparently contain Napa County Magistrate Judge Rodney G. Stone's signature or a god likeness of the Magistrate's signature. It is theorized that Officer Gallegos served the warrants on Lance Kerins and I after the fact in an attempt to legalize his illegal search and seizure ex post facto. (See enclosed copy of warrant.)

In the space provided on the warrant Jesus Gallegos typed the "evidence was seized during a 'routine shakedown' of Napa State Hospital Unit T-13," and the "computer equipment and counterfeit evidence was booked" at the Napa State Hospital Police department as evidence using Property Control Number #07-07-0500," but the warrant does not contain a warrant number, a file number, there was no supporting affidavit with the warrant, and the warrant apparently cannot be located in the Napa Superior Court files. Furthermore, Officer Gallegos perjured himself because I was NOT in possession of counterfeiting evidence, no counterfeiting evidence was found anywhere around me, my room, my bed area, or in the corridor where my room is located.

There are a few different versions of what actually prompted the search and seizure circulating throughout the facility, and the version Officer Gallegos typed on the warrant is not true. I was told that the actual reason for the search is that a "jailhouse informant" that is housed

on Unit T-13 gave a false report to shift-lead Rachael, and untruthfully claimed that I was printing counterfeit money with my computer and computer printer. I was told Rachel then called the Hospital Police who proceeded to Unit T-13 and conducted the unlawful search and seizure. I subsequently obtained a copy of the notes regarding the search that were written in my hospital chart and the records show that a "jailhouse informant" did indeed give shift-lead Rachael a false report, and this shows Officer Gallegos outright lied on the warrant and thereby committed perjury. (See attached copies of "Interdisciplinary Notes" dated 7-9-07)

Subsequently, I learned that the "jailhouse informant" is Ward T-13 patient Jesse Massey, and Massey has been complaining for years that the NSH Police have been threatening and frightening him to be their "snitch." (Informant.) In fact, Massey has made a few complaints about this over the past few years to the U.S. Department of Justice through the Citizens Commission on Human Rights (CCHR), International.[1]

On August 25, 2006, Massey signed an Affidavit stating that NSH Police Officers Carter and Gallegos went to Ward T-13 where Massey is housed and they led him to believe that he had an attorney visit and transported him to the visiting room during a time when no one else was present in the room. Massey said that after Officers Carter and Gallegos had him in the visiting room alone, Carter and Gallegos tightly handcuffed his hands together behind his back, they pushed him onto a seat, and then proceeded to terrify him. Massey reported Officers Carter and Gallegos threatened him and said that if he does not give them information and testimony about other patients, true or not, they would make his life miserable and hurt him. After the incident Massey asked to be put on a 24-hour one-to-one staff observation because Gallegos frightened him so much.

Copies of the affidavit Massey signed were sent to Mr. William Sargent (CCHR Northern California Office, P.O. Box Millville, California 96062—530-472-3299); Mr. Jeff Griffin (CCHR Regional Director of the Western United States, Los Angeles Office, 5055 1/2 Sunset Blvd., Los Angles, California 90027, 323-663-2247 & 800-942-2247); FBI Special Agent

---

[1] The Citizens Commission on Human Rights (CCHR) International was established in 1969 by the Church of Scientology to investigate and expose psychiatric violations of human rights, and to clean up the field of mental healing. Today, it has more than 250 chapters in over 31 countries. Its board of advisors, called Commissioners, includes doctors, lawyers, educators, artists, business professionals, and civil and human rights representatives. CCHR has inspired and caused many hundreds of reforms by testifying before legislative hearings and conducting public hearings into psychiatric abuse, as well as working with media, law enforcement, and public officials the world over.

Suzanne Skeels (San Rafael Office at (415) 454-0513); and Mr. Benjamin Tayloe & Mary Bohan, Trial Attorneys— U.S. Justice Department, Civil Rights Division, Special Litigation Section (202-514-8103), 950 Pennsylvania Avenue, NW—Patrick Henry Building, Washington, D.C. 20530).

Massey recently reported that when an attorney first attempted to telephone Gallegos at NSH about my computer, Gallegos and another NSH Police Officer took him in a room and questioned him. Massey came out of the interview crying and asked to be put on a 24-hour one-to-one staff observation Gallegos frightened him so much. Massey told me that the Officer with Gallegos told Gallegos that's enough or Gallegos would have continued the "questioning."

Officer Gallegos and the NSH Police frequently use third degree tactics while interrogating patients they do not like and the patients they want to "break down" to use as "snitches." Patient Randy Robertson wrote an affidavit stating that NSH Police Officers and Napa County Deputy District Attorney Gary Van Camp tried to dissuade him from testifying truthfully at a trial took place in August of 2005, about a murder that occurred in May of 2002 at NSH. Randy reported that he discovered the body of the victim and spoke to the accused at the crime scene. Randy said that the NSH Police took him to the visiting room when no one else was there and Gary Van Camp was there and, inter alia, indicated to him that it would not be in his best interests to recall the defendant's psychotic behavior prior to the murder. Randy said that Gary Van Camp asked him about how his own case was going and after he explained, Gary Van Camp said with emphasis that "I HOPE IT GOES WELL FOR YOU RANDY."

Randy said he disregarded Gary Van Camp's "advice" and the "coaching attempts" and he testified truthfully; but he did not realize how severe the consequences would be. Randy is now in state prison because he was involved in a minor physical altercation with NSH patient Thomas Webster. This was a discriminatory prosecution because there are serious physical altercations occurring at NSH against patients and staff almost on a daily basis, although the NSH Administration and their Police conceal a lot of this, and only about 1% of these altercations are even reported.

I did not print counterfeit money or do anything else illegal with my computer, and other patients and I provided information to Officer Gallegos and others about who actually printed the play money on a state computer in the Speech and Hearing Department at NSH. Nevertheless, Officer Gallegos and others at NSH would not stop pursuing this illegal course and other black patients and I have been subjected to discriminatory and retaliatory treatment in the past; so I telephoned and mailed copies of the abovementioned evidence to Mr. William Sargent.

Mr. Sargent subsequently informed me that he telephoned the Napa County Superior Court to inquire about the copy of the search warrant I sent him and left a message. Bill told me that a Napa County Superior Court Clerk returned his telephone call and advised him that the signature on the warrant appears to be Magistrate Judge Stone's signature, but the search warrant does not contain a warrant number, she said the warrant is invalid, and she could not locate any record of the warrant in the court files. Mr. Sargent told me he asked the Clerk to send him a copy of the supporting affidavit to the warrant, and the clerk responded that she could not find a supporting affidavit to the warrant and perhaps the affidavit would come in later, [apparently] as some affidavits do.

Mr. Sargent sent copies of the warrant to Mr. Benjamin Tayloe and Mr. Jeff Griffin, inter alia, for examination. Mr. Griffin also provided a copy of the warrant for CCHR Attorney Mr. Kendrick Moxon, Esq., 3055 Wilshire Blvd., Suite 900, Los Angeles, CA 90010—213-487-4468) to examine.

I filed several complaints about this with Mr. Ed Foulk, the Executive Director of NSH, but he claimed that the warrant is legal and Officer Gallegos acted lawfully and properly. (See Response from Ed Foulk.) I also filed a document with the Napa County Superior Court titled "Motion or Petition for Return of Property Pursuant to Penal Code Section 1538.5," in August of 2007, requesting Magistrate Judge Rodney G. Stone to order Officer Gallegos to return my computer and other personal property; but the motion was returned to me on Friday, August 31, 2007, stamped received on August 24, 2007, with a "sticky note" attached to the cover page advising me that the Court needs a case number. (See copy of sticky note.)

I filed complaints about Officer Gallegos confiscating and retaining my computer with the NSH Office of Patients' Rights  (OPR), a subsidiary of Protection & Advocacy, Inc. (PAI),

but neither OPR or PAI would assist me, but in September 2007, Mr. Kendrick Moxon, Esq., telephoned Officer Gallegos and asked him to return my computer to me.

On September 25, 2007, I was escorted to the Program 3 Conference Room and Officer Gallegos, another NSH Officer, and the Ward T-13 Treatment Team were there. Officer Gallegos had my computer and other personal property he seized from me on July 9, 2007, and he told me he would return my computer and property if I signed a receipt stating he returned all my property. Officer Gallegos made it clear that he would not return my computer and property if I would not sign the receipt. Consequently, I signed the receipt and the Treatment Team then told me that I couldn't have my computer back because Tom Moriada, the Program 3 Manager, needs to send my computer to the NSH computer maintenance department (ISD). I asked the Team why Tom Morida is taking my computer and when will I get it back; but the Team said they do not know when I would get my computer and they refused to give me a receipt. My computer still has not been returned to me to this very date and neither has Lance Kerins' computer been returned to him, and Tom Moriada keeps equivocating and he will not provide a forthright explanation why he refuses to return my computer.

On Wednesday, October 10, 2007, the NSH General Management Meeting Minutes for the meeting that was held on October 4, 2007, were distributed to the mental patient members of the Cooperative Advisory Counsel (Inmate Counsel). The minutes record in pertinent or relevant part that "ISD (Information System Department) Representative G. Knight announced that the hospital would implement the removal of individuals personal computers as soon computers are installed for individuals use on the units. The time frame mentioned is approximately 60 days."

The NSH Administration and their Police have been threatening the other patients and I for over one year to confiscate and prohibit all the patients personal computers, and the proposed state computer for patients to use is a logistical nightmare, would be impossible to meaningfully implement, a farce and a sham, and an undue and un warranted expense for the taxpayers. The institution has not even provided a typewriter the patients on each ward to sue in all these years.[2]

---

[2] It is not a bit surprising, though, that Ed Foulk would make such a promise with tax money, considering the article in the November 30, 2007, Napa Valley Sentinel Newspaper written by a disgruntled employee. The article is about Ed Foulk's (confirmed by a recent Department of Finance fiscal audit) rent free home on state hospital grounds and how Foulk has lower level employees do his house chores and do his yard work. The article states Foulk is to lazy to walk the 300 feet or so to his office from his on-grounds residence and drives a state owned golf cart. The article complaints that the lowest level employees are paying for Foulk's lavish lifestyle.

The excuse NSH fabricated to use as an excuse to confiscate and prohibit the patients' from having their own personal computers is false and the actual reason for this is to prevent patients from creating meaningful legal documents and thereby prevent the patients from having meaningful access to the courts, and also to deprive patients of the ability to meaningfully disseminate information to the public, outside agencies and outside organizations; and thereby ensure the U.S. Justice Department will not conduct any more CRIPA (Civil Rights of Institutionalized Persons Act) Investigations at NSH and sue NSH pursuant to Title 42 U.S.C. § 1997, like they did in 1990 and in 2006. (See complaint C 90 2641 EFL, filed September 13, 1990, U.S. District Court, Northern District of California, and see complaint CV 06-2667 GPS and 92-page consent judgment filed Tuesday, May 2, 2006, U.S. District Court, Central District of California, Western Division.

The point here is the NSH Administration and their Police have been making threats for over one year to confiscate and prohibit all the patients' computers premised on illegitimate and misleading information and this was recorded in issues of the Client (inmate) Advisory Council (CAC) Meeting Minutes; but NSH did not decide to implement this deprivation until two weeks after Attorney Moxon telephoned NSH and asked Officer Gallegos to return my computer to me. NSH has a long-standing modus operandi of subjecting the patients to deprivations of property without any legitimate justification and "timing can be considered as circumstantial evidence of retaliatory intent." (See Pratt v. Rowland (1995) 65 F.3d 802, quoting Soranno's Gasco, Inc. v. Morgan (9th Cir. 1989) 874 F.2d 1310, 1316.)

Mr. Ed Foulk and his computer department have held discussions with the CAC about confiscating and removing all the patients' personally owned computers, but the patients who actually own their own personal computers are never involved in the discussions about their computers and are prohibited from being involved in the discussions. It should be included that the patients in the CAC are generally known as sycophant patients and these patients appear to harbor some jealousy about the patients that worked hard to get their own computers. This is not due process.

On October 4, 2007, Mr. Ed Foulk announced that all the patients' personally owned computers would be confiscated and prohibited within 60 days. Mr. Foulk does not have any legitimate penological interest to confiscate, hold, and prohibit my computer or any other

patients' computers, and I allege Mr. Foulk's actual reason for this is to seclude patients from the public and prevent meaningful access to the courts. To this date Mr. Foulk will have my computer returned to me.

**Violations Alleged**

Defendant ED Foulk is violating my right to due process and the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, and federal laws, and like provisions of the California Constitution and laws, under color of law, by condoning and supporting Defendant Jesus Gallegos' reprehensible actions and refusing to return my computer to me.

Defendant Tom Moriada is violating my right to due process and the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, and federal laws, and like provisions of the California Constitution and laws, under color of law, by his actions of confiscating and holding my computer after the initial illegal search and seizure.

Defendant Jesus Gallegos is violating my right to due process and the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, and federal laws, and like provisions of the California Constitution and laws, under color of law, by his actions of and lack of actions described above.

These defendants are also violating my First and Eighth Amendment rights under the U.S. Constitution and laws, and like provisions of the California Constitution and laws, under color of law, by their acts and omissions as described.

**b. Second Cause of Action**
**Defendants Catherine Blakemore, Michelle Mudgett, and Susan Kessler**

Defendant Catherine Blakemore is the Executive Director of PAI, and Defendant Michelle Mudgett is indirectly employed by PAI as the Director of OPR that is indirectly funded by the California Department of Mental Health (DMH) through the contract PAI has with DMH. Defendant Susan Kessler is employed by OPR as the Patients' Rights Advocate at Napa State Hospital.

PAI receives funding from many sources, including the California Department of Mental Health and federal mental health, but fails to do any meaningful advocacy for the patients at

Napa State Hospital, whereas the Attorneys at the Prison Law Office, a privately supported group of attorneys who provide direct legal services at no cost to prison inmates, and supported in major part by a charitable foundation, have represented over 5,000 prisoners since the office was founded in 1976, and is still going strong. (In re Head (1986) 42 Cal.3d 223, 234.)

I filed several complaints with Susan Kessler about the false counterfeiting accusations lodged against me by Defendant Jesus Gallegos, as an excuse to confiscate my computer, and condoned and supported by Defendant Ed Foulk, and Catherine Blakemore and Michelle Mudgett are well aware of this and they refuse to respond to my complaints in writing.

Protection & Advocacy, Inc. (PAI) apparently was established in 1978 to protect and advocate for the rights of individuals with developmental disabilities. PAI's mandate was expanded in 1986 to include representation of individuals with psychiatric disabilities who reside in the facility providing care and treatment. Apparently, PAI's mandate was expanded in 1992 to service all individuals with disabilities. Protection & Advocacy, Inc., was created by the federal Protection and Advocacy for the Mentally Ill Individuals Act of 1986 (PAMI), as amended, contained in Chapter 114 (commencing with Section 10801) of Title 42 of the United States Code, for the protection and advocacy of the rights of individuals identified as mentally ill, as defined in Section 10802(3) of Title 42 of the United States Code, and to defend the rights of individuals identified as developmentally disabled.

Apparently the Office of Patients' Rights - Protection & Advocacy, Inc. was created in 1993 through an act of the State Legislature that called for the removal of responsibilities of the State Office of Patients' Rights and State Hospital Advocates from state employees to that of a private non-profit organization with experience in providing statewide advocacy assistance. The Office of Patients' Rights operates through a contract with the Department of Mental Health. OPR claims that although they are contracted to PAI, which received "big bucks" from their contract with the California State Department of Mental Health, they operate with a different level of access and different authorities than those traditionally related to PAI.

The Office of Patients' Rights (OPR) claims to provide direct advocacy services to Atascadero, Metropolitan, Napa, and Patton State Hospitals because their employees are on-site, but this is far from the truth. Additionally, OPR has two Patients' Rights Advocates in the central office to provide additional advocacy services to state hospital clients as well as to clients in the

community, but this is also a sham. OPR is supposed to serve as a review step in the Title IX complaint procedure. If a client is dissatisfied with the response from a local county advocate his complaint will be forwarded to the Office of Patients' Rights for further review. They also apparently review complaints made regarding the performance of local county advocates, but if their review services are anything like the farce they provide at Napa State Hospital, this is also an abject failure.

The only time I have seen anything substantial and just done by OPR was when it involved something insignificant for "the sake of cosmetics" or to create a facade to make it appear that OPR and their Patients' Rights advocates are doing something worthwhile.

For all practical purposes PAI and OPR are useless to the patients at Napa State Hospital, and this is easily evidenced by the horrid, dishonest, and deadly conditions that the United States Department of Justice (USDOJ), Civil Rights Division, Special Litigation Section, uncovered at Napa State Hospital during both CRIPA Investigations, and if Defendant Blakemore, Defendant Mudgett, and Defendant Kessler properly and meaningfully did the jobs they are getting paid a lot of state and federal tax money to do, their would have been no reason for the U.S. Justice Department to intervene and conduct CRIPA Investigations.

Nevertheless, the Monitor (Psychiatrist Dr. Mohamed El Sabaawi) the USDOJ appointed on May 2, 2006, to implement the Consent Judgment has not done anything substantial to correct the deficiencies or provide the patients with due process of law, and the Monitor has instead made conditions better for the administrators and staff at the facility to the detriment of the patients. The Los Angeles Times Newspaper staff writer Lee Romney did a story on the signing of the Consent Judgment on May 2, 2006, and a series of articles were published in the Los Angeles Times Newspaper on or about May 2, 2006, May 3, 2006, May 4, 2006, and May 5, 2006, about this and the Monitor Psychiatrist Dr. Mohamed El Sabaawi.

The articles stated Dr. Mohamed El Sabaawi attended school in New Zealand with long time Napa State Hospital employee psychologist Dr. Nirbhay Singh and they studied how to treat persons with developmental disabilities, and Dr. Nirbhay Singh is also employed with Dr. Mohamed El Sabaawi at the Human Potential Consulting Group in Alexandria Virginia.

It appears there is a conflict of interest here because Dr. Nirbhay Singh was employed by Napa State Hospital for several years before the May 2, 2006 Consent Judgment was signed and

his fellow worker at the Human Potential Consulting Group in Alexandria Virginia, Dr. Mohamed El Sabaawi, was appointed Monitor where Dr. Singh was employed as a consultant for years at millions of dollars.

It has come to my attention that CCHR Advocate Mr. William Sargent found the name "Douglas Mudgett" while he was exploring the California Department of Mental Health Website. Mr. Sargent e-mailed an inquiry to Michelle Mudgett and asked if Douglas Mudgett is related to or married to Michelle Mudgett, because if Douglas Mudgett is related to or married to Michelle Mudgett, that would be a conflict of interest. Mr. Sargent did not receive a response.

I was told that Michelle Mudgett was employed by the Department of Mental Health as a security guard some time before she was hired as the Director of the Office Patients' Rights, and perhaps this is one reason why the Office of Patients' Rights seems to exclude or shield the security guards at state hospitals from investigation by the Office of Patients' Rights.

If Catherine Blakemore, Michelle Mudgett, and Susan Kessler did the jobs they are getting paid a lot of tax money for, then the United States Department of Justice would not have had to do either CRIPA Investigation.

**Violations Alleged**

Defendant Catherine Blakemore, Defendant Michelle Mudgett, and Defendant Susan Kessler are violating my rights to due process and the equal protection of the laws under the Fourteenth Amendment to the U.S. Constitution, and federal laws, and like provisions of the California Constitution and laws, under color of law, by failing to provide the advocacy services and assistance they are getting paid federal and state dollars to provide. These defendants are also complicit in violations of my First and Eighth Amendment rights under the U.S. Constitution and like provisions of the California Constitution under color of lawby their acts and omissions.

**c. Third Cause of Action**

Napa State Hospital used to have an Internet subscription to West Mate, but a few days after the U.S. Justice Department obliged Napa to sign the May 2, 2006, Consent Judgment they had the subscription discontinued. Instead, they installed a legal research system called "Touch Tonic" or something like that and it is virtually useless. The Touch Tonic system is very user-unfriendly, it is only updated quarterly, and it does not appear to contain several landmark and other cases. It appears Napa State Hospital officials had the West Mate system discontinued right

after the CRIPA Investigation to prevent the patients from having meaningful access to the courts and from exposing them to any more CRIPA Investigations. (See Pratt v. Rowland (1995) 65 F.3d 802, quoting Soranno's Gasco, Inc. v. Morgan (9th Cir. 1989) 874 F.2d 1310, 1316.) and ("timing can be considered as circumstantial evidence of retaliatory intent.")

**IV Request for Relief**

I respectfully request the following, but not limited, relief:

1. Injunctive Relief;
2. Compensatory damages according to proof;
3. Punitive Damages according to proof;
3. Reasonable attorney's fees pursuant to 42 U.S.C. § 1988;
4. Costs of suit; and Such further relief as the court deems proper.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Respectfully submitted,

Bartolo Mullen [signature] Dated: 12-6-07

Enclosures: (See copy of sticky note.)

(See attached copies of "Interdisciplinary Notes" dated 7-9-07)

See enclosed copy of warrant.)

(See enclosed affidavit signed by a random sample of patients that verifies OPR is not responding to complaints.)

(See Kerin's affidavit)

see copies of complaints field with pateitns rights but no resposne

STATE of CALIFORNIA, COUNTY of NAPA,

# SEARCH WARRANT AND AFFIDAVIT
# (AFFIDAVIT)

**Investigator Jesus Gallegos #662** declares under penalty of perjury that the facts expressed by him/her in the attached and incorporated **Statement of Probable Cause** are true and that based thereon he/she has probable cause to believe and does believe that the articles, property, and persons described below are lawfully seizable pursuant to Penal Code Section 1524, as indicated below, and are now located at the locations set forth below. Wherefore, Affiant requests that this Search Warrant be issued.

Jesus Gallegos #662 (Signature of Affiant), NIGHT SEARCH REQUESTED: YES ☐ NO ☒

# (SEARCH WARRANT)

THE PEOPLE OF THE STATE OF CALIFORNIA TO ANY SHERIFF, POLICEMAN OR PEACE OFFICER IN THE COUNTY OF NAPA: proof by affidavit, under penalty of perjury, having been made before me by **Police Officer / Investigator Jesus Gallegos #662** that there is probable cause to believe that the property or person described herein may be found at the location(s) set forth herein and that it is lawfully seizable pursuant to Penal Code Section 1524 as indicated below by "x"(s) in that it:

☐ was stolen or embezzled.
☐ was used as the means of committing a felony.
☒ is possessed by a person with the intent to use it as means of committing a public offense or is possessed by another to whom he or she may have delivered it for the purpose of concealing it or preventing its discovery.
☒ tends to show that a felony has been committed or that a particular person has committed a felony.
☐ tends to show that sexual exploitation of a child, in violation of Penal Code Section 311.3, or possession of matter depicting sexual conduct of a person under the age of 18 years, in violation of Section 311.11, has occurred or is occurring.
☐ there is a warrant to arrest the person.

You are Therefore COMMANDED to SEARCH: (premises, vehicles, persons)

**The Napa State Hospital Police Department, Property Detail located at 2100 Napa-Vallejo Hwy., Napa, California, 94558, in the County of Napa. Property seized on July 9th, 2007 at 2100 Napa-Vallejo Hwy. Unit T-13, Napa, California. The computer equipment and counterfeit evidence was booked at the Napa State Hospital Police Department as evidence using Property Control Number #07-07-0500. The evidence was seized during a routine shakedown of Napa State Hospital Unit T-13.**

For the FOLLOWING PROPERTY or PERSON(s):

Examination and search of computers and computer system components such as; CPU central processing units, internal and peripheral storage devices such as internal or external hard drives, removable storage devices and disks/hard drives, floppy disk drives and diskettes, CD-R, CD-RW, DVD drives and disks, tape drives and tapes, optical storage devices or other memory storage devices, integral RAM or ROM devices; peripheral input/output devices such as keyboards, touch pads, printers, scanners, plotters, cameras, video display monitors, modems, external data storage devices, optical readers and related communication devices such as acoustic or electrical modems, or other controlling devices such as diskettes, CD-R, CD-RW, DVD disks, power back-up devices, connecting switches, interface devices, software to run programs, connecting cables, switches, power sources, and plugs.

Examination and search of all of the above components is for files, data, images, software, operating systems, deleted files, system configurations, drive and disk configurations, date and time, unallocated and slack space, for evidence.

It is your Affiant's experience that computer system forensic examinations and searches cannot be completed within the ten days in which the Search Warrant must be served and the Return to Search Warrant filed with the Search Warrant. It is requested that the 10-day requirement be waived to provide your Affiant ample time to have it processed and comply with the Search Warrant in a timely manner. The Return to Search Warrant and Search Warrant will be filed promptly upon completion of the computer system forensic examination and search.

**AND TO SEIZE IT / THEM IF FOUND** and bring it / them forthwith before me, or this court, at the courthouse of this court. This **Search Warrant** and **Affidavit** and attached and incorporated **Statement of Probable Cause** were sworn to as true under penalty of perjury and subscribed before me on this 18 day of July, 2007, at 4:35 ~~A.M.~~ / **P.M.** Wherefore, I find probable cause for the issuance of this Search Warrant and do issue it.

KNOCK - NOTICE EXCUSED: YES ☐ NO ☒

NIGHT SEARCH APPROVED: YES ☐ NO ☒

R. Stone

(Signature of Magistrate)

Judge of the Superior Court of California, County of Napa

Rodney G. Stone

(Magistrate's Printed Name)

Description of DETAIL (Include contributing factors, what occurred, who was Involved, and what action was taken. Attach separate pages if necessary).

State of California Health and Human Services Agency

Department of Mental Health

| YEAR | | PROB. NO. | ALL ENTRIES SHALL BE SIGNED WITH NAME AND TITLE |
|---|---|---|---|
| DATE | TIME | | |
| 7907 | 1900 | | STAFF Received a TIP From an Individual claiming That MR Mullen was printing Counterfeit Money on his computer. Shakedown was performed and STAFF found 80 dollars in Counterfeit Money from another peers Room. Hospital police was on UNIT and he called his SGT. HIS SGT came To UNIT saw The Money and received AN order To confiscate computer and all CD's and Disk. Items That were confiscated are 75 CD's in a canister, 46 CD's loose, 21 CD's in a case, 12 Floppy Disk, A Wells Fargo Banking CD, Memory Cartridge, power cord, HP Adaptor, Computer, printer and Modem. MR. Mullen was brought onto The UNIT and Hospital police spoke To Him on The reason why They were Taking His computer. Client handled situation well. Once The shakedown was over and client were brought back onto The UNIT. MR Mullen was given a copy of Shakedown Report. When he saw That STAFF also Took 3 Sex books "The Good Sex Guide", "Sensual Touch" and "Secret Sexual positions" client yelled "No, They Can't Take My books, I can have Them" Client was Hopping up and down and his Neck Veins were clearly Visible. This writer spoke To him in a calm Matter and client was redirectable. Hospital police were called for Walk Throughs Throughout The rest of shift. — [signature] |

**INTERDISCIPLINARY NOTES**

MULLEN, BARTOLO CA 3-15-64
NA-252726-6 U
M ESL BL 2
12-30-97 CC PC 1026

MH 5624 (02/06)

Confidential Patient/Client Information
See Welfare & Institutions Code
Sections 5328 & 4514

AFFIDAVIT

On 9-11-07 I, Jess W. Massey, was escorted by Officer Gallegos to the Program 3 hallway conference room. When I arrived there were two men in black suits who introduced themselves as secret service agents and another hospital police officer. I was asked to sit down and the secret service agents began questioning me about some counterfeit money. Afterword Officer Gallegos asked the secret service agents to leave the room. Once they were out of the room Officer Gallegos and the other hospital officer were still present. Officer Gallegos looked at me in a mean way and stated " If you dont keep going along and tell the story I'll kick your ass" at this time I began crying and became scared and upset. I told Officer Gallegos that I want an attorney. The other hospital police officer told Gallegos "that's enough" I was then escorted by the other officer back to my unit. I took a PRN and told my staff what happened. As a result of my being upset and scared I was put on constant watch by staff and talked to the doctor of the day. I fear Officer Gallegos because he on another occassion had me escorted to the visiting room by another officer who told me I had an attorney visit. When I arrived Officer Gallegos was present and he had the other officer handcuff me and I was pushed down in a chair. Officer Gallegos then began to ask me many questions about other clients and what was going on in the facility. I basically told Officer Gallegos what I thought he wanted to hear out of fear. Officer Gallegos then told me he would get me some burgerking food. He never Baught this food.
I SWEAR UNDER THE PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND UNDERSTANDING.


DATE: 9-16-07

JESS W. MASSEY

AFFIDAVIT

I, Lance Kerins, was given a copy of a warrant to search my computer by Napa State Hospital Police Department, Investigator Jesus Gallegos #662. This warrant, upon comparison with the warrant that Bartolo was served by this same Investigator, is exactly the same warrant. All information on the warrant I was served is the same as the warrant Bartolo Mullen was also served. There is no difference whatsoever at all. My computer is a Gateway M320X. My computer is a different brand and model than Bartolo Mullen computer. neither my name or Bartolo Mullen name is on these search warrants.

I DECLARE UNDER PENALTY OF PERJURY THE FOREGOING IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE.

Date: August 3, 2007.

Lance Kerins

Lance R. Kerins

SIGNATURE



CALIFORNIA DEPARTMENT OF
Mental Health

Napa State Hospital
2100 Napa-Vallejo-Highway, Napa, CA 94558-6293
(707) 253-5000

August 22, 2007

Mr. Bartolo Mullen
Program 3, Unit T-13

This letter is in response to your letter forwarded to me by the Patients' Rights Office and received on August 10, 2007 in which you request a first level appeal for complaint #720132 regarding your computer and printer being confiscated by Hospital Police.

I have reviewed your request for appeal and the response that the Patients' Rights Office sent you. The response they sent was accurate and appropriate.

I have also reviewed this complaint with Hospital Police. Your computer and printer were confiscated as a result of an open criminal investigation and under a legal search warrant signed by Rodney Stone, Judge of the Superior Court of California, County of Napa. Officer Gallegos as well as the other Officers followed Napa State Hospital policies and procedures within the laws of the State of California. I can find no basis for the allegations you have stated against them.

As this is an open criminal investigation, I have no information as to when or if your computer and printer will be returned to you.

Sincerely,

Ed Foulk

ED FOULK, Ed.D.
Executive Director

c: Tom Moraida
Susan Kessler

///

///

Bartolo Mullen
2100 Napa Vallejo Hwy.
Napa, CA 94558
In pro per

Need a case number

Danny the Court sent this back with the Above Note

SUPERIOR COURT OF CALIFORNIA
IN AND FOR NAPA COUNTY

| | |
|---|---|
| BARTOLO MULLEN,<br><br>Plaintiff,<br><br>v.<br><br>ED FOULK & JESUS GALLEGOS,<br><br>Defendants. | No.<br><br>MOTION OR PETITION FOR RETURN OF PROPERTY PURSUANT TO PENAL CODE, SECTION 1538.5. |

**Introduction**

I, Plaintiff Bartolo Mullen, am confined and restrained of my liberty at the Napa State (Mental) Hospital (NSH), Napa California, as a mental patient under Penal Code, section 1026, and Mr. ED Foulk is the Executive Director of NSH and as such he is legally responsible for the overall operation of the facility. Mr. Foulk knows or should know of the unlawful search and seizure that will be explained below.

**Standard of Review**

Plaintiff would like to begin by asking the Court to please hold this however in-artfully prepared pro per or pro se pleading to "less stringent standards than the formal pleadings drafted by lawyers" (Haines v. Kerner, 404 U.S. 519 (1972); Baslistreri v. Pacifica Police Dept., 901 F. 2d 696 (9th Cir. 1990), "because the pro se litigant is far more prone to making errors in pleading than the person who benefits from the representation of counsel (Noll v. Carlson, 809 F.2d 1446, 1448, 7 Fed.R.Serv.3d 253),

Received
AUG 2 4 2007
Napa Superior Court

**Office of Patients' Rights use only**
Date received by O.P.R.:
Tracking #.
Date Closed:

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- PATIENT COMPLAINT FORM
- QUESTIONS & CONCERNS

Patient Name: BARTOLO MULLEN ID# : 202726-6

Unit #: T-13 Commitment Code: P.C. Sec. 1026 Date: NOVEMBER 28, 2007

Describe your complaint below: * Do you have Attachments?_______

ON JULY 9, 2007 MY COMPUTER, ACCESSORIES, AND OTHER PERSONAL PROPERTY WAS CONFISCATED BY NAPA STATE HOSPITAL POLICE DEPARTMENT TO ALLEGEDLY SEARCH FOR COUNTERFEITING EVIDENCE. ATTORNEY KENDRICK MOXON, Esq., TELEPHONED THE POLICE DEPARTMENT, EXECUTIVE DIRECTOR, & PROGRAM DIRECTOR AND ASKED THAT MY PROPERTY BE RETURNED. ON SEPTEMBER 25, 2007 OFFICER JESUS GALLEGOS RETURNED MY PROPERTY TO TOM MORAIDA (program director). IN TURN TOM MORAIDA SENT MY PROPERTY TO THE INSTITUTION COMPUTER DEPARTMENT IN AN ATTEMPT TO JUSTIFY AND PERPETUATE THE UNLAWFUL SEARCH & SEIZURE. MY COMPUTER IS CONTINUALLY SHUFFLED AROUND TO DIFFERENT DEPARTMENTS OF THE FACILITY. NOW THE STORY HAS CHANGED & THEY ARE THREATENING TO CONFISCATE ALL THE PATIENTS COMPUTERS [ PERMANENTLY] TO SEARCH FOR PORNOGRAPHY, INTER ALIA. I AM THE VICTIM OF SELECTIVE, DISCRIMINATORY, & RETALITORY PROSECUTION. THE WARRANT WAS GENERIC & PRE-SIGNED & PERHAPS A FORGERY. I WAS FALSELY ACCUSED OF MAKING PLAY MONEY. MY COMPUTER CONTINUES TO BE HELD WHICH IS " FRUIT OF THE POISONOUS TREE." ALL BUT MY COMPUTER WAS RETURR TO ME. MY EXTERNAL HARD DRIVE WAS DAMAGED, MY DISCS, & MY PRINTER WAS DAMAGED. I AM NOW ATTEMPTING TO GET REIMBURSEMENT FOR THE DAMAGED PROPERTY. I AM ALSO BEING DENIED ACCESS TO THE LAW LIBRARY TO CONTINUE TO REPRESENT MYSELF IN THE FEDERAL COURTS U.S. DISTRICT COURT, NORTHERN DISTRICT. CASE # CO-3676 R (PR). I informed the Federa courts Also of my situation

Office of Patients' Rights Response:

Patients' Rights Advocate signature: ________________ Date:________

This is a non-patients' rights complaint which is being referred to: ________ Dept/Prog: (name)________________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date ______

NSH 130 (Revised July/2001)

BARTOLO MULLEN
UNIT T-13
(707) 255-9637 / 255-9822

10-18-07

RE: EQUAL TREATMENT.

TO WHOM IT MAY CONCERN,

ON 10-10-07 DURING THE COORPERATIVE ADVISORY COMMITEE MEETING IT WAS ANNOUNCED BY THE CAC CLIENT REPRESENTATIVE FOR (GMM) GENERAL MANAGEMENT MEETING THAT THE CLIENTS WOULD BE ALLOWED TO KEEP THEIR COMPUTERS UNTIL THE STATE PROVIDED UNIT COMPUTERS WERE INSTALLED ON THE UNITS. THIS IS WHAT THE MINUTES REFLECT FOR THAT MEETING AND THIS IS WHAT UNIT T-13 CLIENT REPRESENTATIVE STATED TO ME ALSO.

MY QUESTION IS WHY AM I, BARTOLO MULLEN, BEING EXCLUDED FROM THIS DECISION? MY COMPUTER IS THE SAME AS IT WAS UPON ITS ARRIVAL IN THE PACKAGE ROOM. THERE IS NO NEW DISCOVERIES AS FAR AS WHAT MY COMPUTER IS CAPABLE OF.

1) I HAVE A CD BURNER. I AM WILLING TO REMOVE IT, EVEN THOUGH THE PACKAGE CENTER AND THE UNIT SUPERVISOR KNEW THIS AS WELL AS THE PROGRAM DIRECTOR EVERY SINCE ITS ARRIVAL.
2) I DO NOT HAVE AND WIRELESS OR BROADBAND CARD INSTALLED ON MY COMPUTER. FOR ME TO GET ON THE INTERNET WOULD TAKE THE SAME INTERNAL OR EXTERNAL HARDWARE THAT EVERY OTHER CLIENTS LAPTOP WOULD NEED. MY COMPUTER HAS NEVER BEEN ON THE INTERNET.
3) I HAVE A BUILT IN CAM. THIS WAS KNOWN UPON ITS ARRIVAL AND WAS DISABLED MANUALLY AS IT IS STILL DISABLED TO THIS DAY.

I HAVE NOT YET RECEIVED ONE SINGLE WRITTEN RESPONSE EXPLAINING EXACTLY WHY I CANNOT HAVE MY COMPUTER BACK NOR HAVE I BEEN GIVEN AN OPPORTUNITY TO HAVE A PROFESSIONAL CORRECT OR DO WHATEVER IS NECESSARY FOR ME TO KEEP MY COMPUTER. I AM WILLING TO SEND IT TO A PROFESSIONAL AND HAVE WHATEVER NEEDS DONE OR UNDONE IN ORDER TO KEEP MY COMPUTER AS LONG AS THEY ARE ALLOWED. THIS IS NOT FAIR TO ME AND I AM BEING TREATED DIFFERENTLY BY BEING DENIED THE SAME AS THE OTHER PATIENTS IN THIS FACILITY WHO OWN COMPUTERS.

RESPONSE: ______________________________________________

Office of Patients' Rights use only
Date received by O.P.R.: 10/1/07
Tracking #: 867182
Date Closed:

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- PATIENT COMPLAINT FORM
- QUESTIONS & CONCERNS

Patient Name: Bartolo Mullen ID#: 202726-6

Unit #: T-13 Commitment Code: PC 1026 Date: 10-01-07

Describe your complaint below: * Do you have Attachments?________

My computer was confiscated by Tom moraida on 9-25-07. Tom moraida sent my computer to ISD, Information systems Department. I want to know: 1) why did Tom moraida confiscate my computer? 2) what is ISD Looking for? 3) Is ISD seaching through my personal and Legal files/Data? 4) Is ISD manually taking my computer apart? 5) what Legal Athority does Tom moraida have allowing

Office of Patients' Rights Response: these actions against me And under what Athority does he have to search my computer? The HPO Just searched my computer with a warrant that was expired.

Patients' Rights Advocate signature: ______________ Date:________

This is a non-patients' rights complaint which is being referred to: __________ Dept/Prog: (name)______________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date ________

| Office of Patients' Rights use only |
|---|
| Date received by O.P.R.: 9/28/07 |
| Tracking #: [illegible] |
| Date Closed: |

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- PATIENT COMPLAINT FORM
- QUESTIONS & CONCERNS

Patient Name: [illegible] ID#: [illegible]

Unit #: T-13 Commitment Code: PC 1026 Date: 9-27-07

Describe your complaint below: * Do you have Attachments? ________

On 1-25-07 my computer, printer and external hard drive was confiscated by [illegible]. There exist no reasonable cause to confiscate my property, this does not apply to all the patients who own computers. This selective discriminatory harassment/reprisal needs to end. There is no warrant to search and I do not approve of my computer being searched and [illegible]. My computer [illegible] and this violates my warrant. I also have personal and legal [illegible]

Office of Patients' Rights Response: [illegible] court and I am [illegible] right to [illegible]. Both [illegible] violations of my civil/constitutional rights continually being violated by the [illegible] and state employees of the [illegible].

Patients' Rights Advocate signature: ______________________ Date: __________

This is a non-patients' rights complaint which is being referred to: __________ Dept/Prog: (name)______________________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date ________

NSH 130 (Revised July/2001)

| Office of Patients' Rights use only |
| --- |
| Date received by O.P.R.: 9/25/07 |
| Tracking #. 867182 |
| Date Closed: |

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- PATIENT COMPLAINT FORM
- QUESTIONS & CONCERNS

Patient Name: Bartolo Mullen ID# : 202726-6

Unit #: T-13 Commitment Code: PC 1026 Date: 9-24-07

Describe your complaint below: * Do you have Attachments? ________

I am a prose litigant in a Federal Court. I need access to the law library. I would like to get at least 3 Hrs. per week. Since my computer has been illegally confiscated whereas I have no access to the legal files and info on my computer. I need law library access. This unit is not giving me or my peers any access. I am also pro per in the local courts. I have a habeas pending in Napa superior court concerning conditions of confinement. I desperately need access to law lib.

Office of Patients' Rights Response:

Patients' Rights Advocate signature: ______________________ Date: __________

This is a non-patients' rights complaint which is being referred to: __________ Dept/Prog: (name)______________________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date ________

NSH 130 (Revised July/2001)

Office of Patients' Rights use only
Date received by O.P.R.: 9/5/07
Tracking #: 867182
Date Closed:

OFFICE OF PATIENTS' RIGHTS
NAPA STATE HOSPITAL

- PATIENT COMPLAINT FORM
- QUESTIONS & CONCERNS

Patient Name: Bartle Mullen ID# : 202726-6

Unit #: T-13 Commitment Code: PC 1026 Date: 9-4-07

Describe your complaint below: * Do you have Attachments?________

I would like to know "who" decides when my computer will be returned to me. I was told that it would be held for 3 days when it was taken on July 4 200[illegible] It has now been 2 months. I want to know "WHO" needs to release my computer?

Office of Patients' Rights Response:

Patients' Rights Advocate signature: ______________________ Date:__________

This is a non-patients' rights complaint which is being referred to: __________Dept/Prog: (name)____________________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date __________

NSH 130 (Revised July/2001)

**OFFICE OF PATIENTS' RIGHTS**
**NAPA STATE HOSPITAL**

| Office of Patients' Rights use only |
|---|
| Date received by O.P.R.: 10/22/07 |
| Tracking #. 861162 |
| Date Closed: |

- **PATIENT COMPLAINT FORM**
- **QUESTIONS & CONCERNS**

**Patient Name:** [illegible] **ID# :** 202726-6

**Unit #:** T-13 **Commitment Code:** PC 1026 **Date:** 10-16-07

**Describe your complaint below:** *** Do you have Attachments?**________

I have filed several complaints since July 1 2007 most of them I have not received a response let alone a receipt. I need at least a receipt of all the complaints I have filed concerning my computer and law library access since 7-04-07

**Office of Patients' Rights Response:** [illegible] ... is ... [illegible] ... several weeks?

**Patients' Rights Advocate signature:** ____________________ **Date:**________

This is a non-patients' rights complaint which is being referred to: __________ Dept/Prog: (name)____________________ for resolution and response. Please attach your response and return to me within 5 days.

Advocate ______ Date ________

NSH 130 (Revised July/2001)

AO 440 (Rev 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER.**

CASE NUMBER: No.

**TO: ED FOULK, Executive Director, Napa State Hospital,** 2100 Napa Vallejo Hwy., Napa, California 94558.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**CLERK** **DATE**

**(By) DEPUTY CLERK**

AO 440 (Rev 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER**

CASE NUMBER: No.

**TO: Tom Moriada, Program 3 Director Napa State Hospital,** 2100 Napa Vallejo Hwy., Napa, California 94558.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**CLERK** **DATE**

**(By) DEPUTY CLERK**

AO 440 (Rev 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER**

CASE NUMBER: No.

**TO: Officer Jesus Gallegos, Napa State Hospital Police Department,** 2100 Napa Vallejo Hwy., Napa, California 94558.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**CLERK** **DATE**

**(By) DEPUTY CLERK**

**AO 440 (Rev 8/01) Summons in a Civil Action**

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER**

CASE NUMBER: No.

**TO:** Catherine Blakemore, Executive Director, Protection and Advocacy Inc., Sacramento Regional Office, 100 Howe Ave., Suite 235 North, Sacramento, California 95825.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**CLERK** **DATE**

**(By) DEPUTY CLERK**

AO 440 (Rev 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER**

CASE NUMBER: No.

**TO:** Michelle Mudgett, Director Office of Patients' Rights, 100 Howe Ave., Suite 185 North, Sacramento, California 95825.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

Northern District of California

**BARTOLO MULLEN**

**SUMMONS IN A CIVIL CASE**

V.

**ED FOULK;TOM MORAIDA;OFFICER JESUS GALLEGOS;CATHERINE BLAKEMORE;MICHELLE MUDGETT; AND SUSAN KESSLER**

CASE NUMBER: No.

**TO:** Susan Kessler, Napa State Hospital Office of Patients' Rights, 2100 Napa Vallejo Hwy., Napa, California 94558.

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF Bartolo Mullen at Napa State Hospital, 2100 Napa Vallejo Hwy., Napa, California 94558, an answer to the complaint which is served on you with this summons, within 20 days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**CLERK** **DATE**

**(By) DEPUTY CLERK**